Estate of Stephen Smith, Deceased. Appeal of M. H. Stevenson.

*Executors and administrators—Accounting—Sale of land—Vendor and vendee.*

Where a vendor of land under articles of agreement dies before he has conveyed the land, his executor cannot be surcharged with the money due and owing on the contract, if it appears that the executor never received any of the proceeds; that there was a mortgage on the land which prevented him from making a good title; that even if legal proceedings had been instituted the vendee was financially unable to pay the money, and that the land remained part of testator's estate and was sold under an order of the orphans' court.

*Mortgage—Judgment—Payment—Scire facias—Reversal of proceeding.*

Where the Supreme Court reverses a judgment on a scire facias sur mortgage, an execution and sale of the mortgaged premises to the mortgagee which had taken place pending the appeal, becomes a nullity, and the judgment, execution and sale in no way constitute a payment of the mortgage.

*Mortgage—Orphans' court—Jurisdiction—Scire facias.*

After the Supreme Court has reversed the judgment on a scire facias on a mortgage given by a decedent, the mortgagee may abandon his proceedings on the scire facias and prefer his claim in the orphans' court on distribution of the proceeds of the estate, notwithstanding that, pending the disposition of the case in the Supreme Court, the mortgaged premises were sold under an execution on the judgment and purchased by the mortgagee, the reversal of the judgment rendering the sale void.

Argued Oct. 17, 1899. Appeal, No. 60, Oct. T., 1899, by M. H. Stevenson, from decree of O. C. Washington County, May T., 1897, No. 35, overruling exceptions to auditor's report. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. STERRETT, C. J. and MITCHELL, J., dissent.

Exceptions to auditor's report, passing on exceptions to executor's account and making distribution of the balance in the hands of the accountant. Before McILVAINE, P. J.

From the report of the auditor, H. J. Van Kirk, Esq., the following facts appear:

Stephen Smith died on October 7, 1892, having first made his last will and testament, which was admitted to probate

October 24, 1892, and letters testamentary thereon issued to George M. Tenan the same day. The testator died seized of a tract of land containing about seventy-five acres, known as the McCurdy farm; also a tract of land containing about 154 acres, known as the Home Farm, situated in Hanover township, Washington county. He was also possessed of personal property amounting to about $1,000. He had in his lifetime, under article of agreement dated January 2, 1888, sold twenty acres off the Home Farm, which then contained about 174 acres, to one Sanson Patterson, for $1,000. Only part of this purchase money had been paid in the lifetime of the testator, and no deed of conveyance was ever given to the purchaser. The executor has never taken any legal steps to ascertain the balance of the purchase money due, or for the specific performance of the contract. The Home Farm, including the twenty acres sold to Sanson Patterson, was subject to the lien of a mortgage given by testator to the Mutual Life Insurance Company, of New York, dated October 18, 1876, to secure the payment of $3,500. One hundred dollars of the principal was paid in his lifetime. The mortgage was the first lien. Both of testator's farms were subject to the lien of judgment No. 164, February term, 1892, Mattie E. McElroy v. Stephen Smith, for $751.04, with interest from December 1, 1891. The unsecured debts and funeral expenses amounted to something over $2,000. The testator's wife, Mary Jane Smith, mentioned in his will, was his second wife, and the stepmother of the testator's children named in his will. His said wife had released her right of dower in the McCurdy farm. Wm. Smith, one of testator's children and legatees, died December 23, 1892, intestate, unmarried and without issue, leaving as his heirs at law John A. Smith, Kate Floyd, Sallie A. Mahan and Mary A. Smith, his brother and sisters. The exceptant, M. H. Stevenson, purchased the interest of the heirs of Stephen Smith, deceased, in said estate as appears by the following deeds of record, to wit: Deed of John A. Smith to M. H. Stevenson, dated January 29, 1894, recorded in deed book, No. 196; deed of Mary A. Smith to M. H. Stevenson, dated May 9, 1895; deed of Kate G. Floyd to M. H. Stevenson, dated May 9, 1895; two deeds of Sallie A. Mahan to M. H. Stevenson, dated July 5, 1895.

The personal estate was appraised October 28, 1892, and the

list filed with the register December 8, 1892, amounting to $939.90. No sale list was ever filed in the register's office, but a pencil copy was filed with the auditor at the first hearing, showing that the sale took place on November 15, 1892.

Immediately after taking out letters, the accountant took the control and management of the farms, and received therefrom the rents, crops, etc., amounting to about $1,000.

The executor obtained an order of the orphans' court, February 13, 1893, for the sale of the real estate, for the payment of debts, at either public or private sale. This order was renewed several times; the last time it was renewed was December 11, 1893, to February term, 1894. Under this order at a public sale on January 26, 1894, M. H. Stevenson, the exceptant for the heirs, bid $1.00 upon the Home Farm of 154 acres, subject to the aforesaid mortgage and judgment, and $1,800 on the McCurd tract containing about seventy-five acres. The said farms were, upon these bids, sold to Mr. Stevenson for the heirs of Stephen Smith, deceased. Upon the return of this sale by the executor, the sale so returned, at the request of the purchaser, was, on May 9, 1894, set aside by the court, and the order of sale renewed to August term, 1894. The order of sale was again renewed at August term, 1894, at the request of the executor. On December 7, 1894, the executor made return that he had sold the farm of seventy-three acres to Robert Scott at private sale for $45.00 per acre cash, which sale the court confirmed nisi, twenty days, and renewed the order of sale as to the Home Farm of 154 acres. On March 20, 1895, the order of sale was renewed, and, upon the return and petition of the executor, he was authorized to divide the farm into two or more parcels. On June 12, 1895, the order of sale was renewed, and on August 9, 1895, the return of sale by the executor states that the land was sold to M. H. Stevenson at the price of $35.00 per acre, on the terms stated in the order,—one third payable on confirmation of sale, and the balance in two equal annual payments thereafter, with interest from date of confirmation. This sale was finally confirmed September 17, 1895. On January 6, 1896, the petition of the executor was presented in court setting forth the sale to Stevenson of the 154 acre farm at $35.00 per acre, the confirmation of the sale, and Stevenson was in possession and refused to comply with the terms of sale as to the payment of

one third of the purchase money on confirmation of the sale, and asking for a citation to him, returnable to a day certain, to show cause why the confirmation should not be lifted, etc.   The citation was awarded, returnable to January 27, 1896.   The answer of M. H. Stevenson and replication of executor having been filed, Miss. L. B. McConaughy was appointed commissioner to take testimony and report the same to the court.   After the testimony was taken upon final hearing, Judge McILVAINE, in his decree, refused to rescind the confirmation of the sale, but required a formal compliance with the terms of sale set out in the order, and refused to recognize the agreement between the executor and M. H. Stevenson set out in exhibit "D," dated July 30, 1895.   M. H. Stevenson excepted to the decree of the court and appealed the case to the Supreme Court.   The case is reported in 179 Pa. 208, under the style of Stephen Smith's Estate, M. A. Stevenson's Appeal.

The McElroy judgment was assigned to Robert Scott on May 4, 1894, and on May 10, 1895, the debt, interest and costs of this judgment were assigned by Scott to Geo. M. Tenan, executor.   The mortgage in favor of the Mutual Life Insurance Company for $3,400 was assigned to Robert Scott and J. B. Tenan, on or about June 23, 1894; the assignment was lost or mislaid and another one obtained from the insurance company which is dated May 13, 1895, and recorded in the recorder's office of this county, on February 25, 1897.   Although there are flat contradictions in the testimony of the executor given in this case and in the proceeding to lift the confirmation of the sale to M. H. Stevenson of the Home Farm; and while it would be difficult to determine from his testimony who were the purchasers of this mortgage, yet in the light of the testimony of J. B. Tenan, along with that of the accountant, it appears that Robert Scott and J. B. Tenan were the purchasers of the mortgage.

No part of J. B. Tenan's half of the mortgage has been paid by the accountant.

The testimony shows that M. H. Stevenson entered into possession of the Home Farm early in May, 1895, as assignee of the heirs, and was in possession when he became the purchaser at the sale on August 9, 1895.

The purchase money of the McCurdy farm, sold to Robert

Scott, amounted to $3,390.46, and was payable December 27, 1894; the McElroy judgment, which on April 1, 1895, amounted to $817.50, and the one half of the $3,400 mortgage, which on April 1, 1895, with accrued interest amounted to $1,836.55, owned by Robert Scott, were credited on the purchase money of the McCurdy farm.

It appears that Robert Scott gave the accountant $600 on March 30, 1895, and $1,200 on April 22, 1895, with the intention on his part of buying a part of the Home Farm. This $1,800 did not belong to the estate; so much of it however as was necessary to pay the balance of the purchase money of the McCurdy farm, when so applied, became estate money; and according to the calculation made by Mr. Stevenson and the accountant, the balance of the purchase money due at that time by Robert Scott was $645.95, and on May 16, 1895, after deducting $645.95 from the $1,800, the balance, $1,154.05, was paid over to Robert Scott by accountant.

The account of the executor was filed in the register's office on April 9, 1897, and it is claimed on behalf of the accountant that this account is made out in accordance with the opinion of the Supreme Court in M. H. Stevenson's appeal.

The eighth exception to the account of the executor was:

The accountant has failed to charge himself with the balance due on article of agreement between Stephen Smith and Sanson Patterson dated January 2, 1888, the original being in the possession of accountant's attorney, H. M. Dougan, Esq.

The auditor disposed of this exception as follows:

The counsel for the accountant objected to the evidence in relation to the Sanson Patterson agreement, claiming that Mr. Stevenson had no interest whatever in the agreement. This objection is overruled, as the auditor regards this agreement as a proper subject of inquiry in this proceeding, because the balance due under it would be an asset of the estate of Stephen Smith, deceased. Moreover, the original petition of the executor for power to sell real estate for the payment of debts shows that he had knowledge of the existence of the Sanson Patterson claim, that it was an asset of the estate, but he did not admit that this money could certainly be collected. Under this agreement Stephen Smith agreed to sell Sanson Patterson twenty acres off the Home Farm, then containing 174 acres, for

$1,000 ; $400 payable November 1, 1886, when possession was given, and the balance to be paid November 1, 1888, with interest from November 1, 1886.   On this agreement there are two credits, one for $332.50 dated January 3, 1888, and the other for $100 dated August 1, 1889.   These receipts are signed by Stephen Smith.   After the death of Stephen Smith, no legal steps were taken by the executor to enforce payment of the balance of the purchase money, or for the specific performance of the contract.   It is true, as claimed by the executor, that the mortgage in favor of the Mutual Life Insurance Company of New York for $3,400 was a lien upon this land at and prior to the date of the Sanson Patterson agreement.   The mortgage was not a lien on the McCurdy farm.   The McElroy judgment amounting to $817.50 was a lien on both farms.   It appears from the testimony of the accountant that he had got Robert Scott and J. B. Tenan to buy the mortgage so that the Patterson land could be released from the lien of the mortgage, because as he testified, " the insurance company wouldn't likely want to release twenty acres off the 174."   They bought the mortgage on June 23, 1894.   It also appears that Sanson Patterson claimed a set-off of about $400.   The accountant admits that this bill of Patterson was for money advanced to or owing by Stephen Smith to Patterson prior to the date of the agreement, which was written by the accountant; that no claim was then made by Mr. Patterson that Mr. Smith was indebted to him in the sum of $400 or in any other sum.   The mere fact that Patterson claimed such a set-off would not of itself relieve him from the duty of taking some legal steps to collect this money.   Although he had a number of conferences with Patterson and agreed to take less if he would pay it, it does not put the accountant in any better position.   The only serious difficulty in the way of a complete settlement of this matter was the existence of the mortgage which J. B. Tenan and Robert Scott purchased June 23, 1894, and as already stated, at the instance of the accountant, so that they could release the twenty acres.   The purchasers did not release, nor does it appear that the accountant made any effort to get them to do so.

Robert Scott purchased the McCurdy farm in December, 1894, for $3,390.46 cash.   His one half the mortgage and the McElroy judgment of $817.50 were credited on the purchase

money as of date April 1, 1895, although the judgment was not assigned to the executor until May 10, 1895, and his half of the mortgage was not satisfied of record until February 25, 1897. In the agreement between the executor and M. H. Stevenson, dated May 15, 1895, known as exhibit "C," interest was calculated on the Scott half of the mortgage and McElroy judgment, to April 1, 1895, and at that date credited on the Scott purchase money. And as heretofore stated, the auditor considered Scott's half of the mortgage and this judgment as a credit on Scott's purchase money as of date April 1, 1895. Moreover, the evidence shows that on May 10, 1895, George M. Tenan, J. B. Tenan, Robert Scott, M. L. A. McCracken, John H. Murdoch and M. H. Stevenson met in the recorder's office at Washington, Pa., pursuant to an arrangement between the accountant and M. H. Stevenson, for the purpose of settling the mortgage; that on this occasion Robert Scott was asked to satisfy his half of the mortgage, as it had been paid as heretofore explained, and as both Scott and the accountant admitted, which he refused to do; that M. L. A. McCracken, Esq., tendered J. B. Tenan his check for any amount that was due on the mortgage, and that he refused to accept anything on account of his one half of the mortgage. Although accountant now disclaims any interest in the mortgage, his relation to the purchasers, and to the purchase itself, was such that he could, no doubt, have induced them to release the Patterson land from the lien of the mortgage if he had so desired, in the interest of the estate of which he was the trusted executor. And more especially could this have been done after April 1, 1895, at which date the McElroy judgment and Scott's half of the mortgage had been actually paid by entering a credit for their amount on the purchase money of the McCurdy farm, and the only lien remaining against the Home Farm was J. B. Tenan's half of the mortgage amounting to $1,836.55 at that date. This farm being worth vastly more than sufficient to secure Tenan's half of the mortgage, under such circumstances it can fairly be presumed that the Patterson land could have been released, and an earnest effort should have been made for the purpose.

Why J. B. Tenan refused to accept the money for his half of the mortgage on May 10, 1895 when tendered to him by McCracken, why J. B. Tenan and Scott did not release the Patterson land

from the lien of the mortgage, why J. B. Tenan did not do so after Scott's half of the mortgage had been paid, or why the accountant made no effort to induce them, and especially his brother, to do so, are questions which these parties alone can answer.    It further appears that J. B. Tenan issued a sci. fa. upon this mortgage and obtained a judgment against the executor for the amount due, an execution was issued and the land was sold and purchased by J. B. Tenan, who brought an action of ejectment to recover the possession of the Home Farm.    After trial and verdict for the defendant the case was appealed to the Supreme Court where it is now pending.

Under the facts and circumstances in relation to this mortgage, the accountant might, in the interest of the estate, have presented his petition to the court asking for a rule on J. B. Tenan to show cause why the Patterson land should not be released from the lien of his half of the mortgage, and this course, no doubt, would have eventually resulted in the release of the land, and then the accountant could have asked for the specific performance of the contract.

The auditor is of the opinion, under all the facts and circumstances connected with the Sanson Patterson agreement, that the accountant has been guilty of negligence and failure in duty in not doing what he could and should have done to protect the interests of this estate.    He could have either collected the balance of the purchase money or recover the land.    And while it may be a hardship upon the accountant to make him accountable for the loss under this agreement, he has no one to blame for it but himself.    The estate should not be made to suffer loss which it was his duty to prevent, and which he could have prevented by proper effort.    It does not appear to the auditor to be just to charge the accountant with the balance of the purchase money with interest, which on April 9, 1897, the date of filing this account, would amount to more than the original price of the land.    The Home Farm, of which this piece was once a part, sold for only $35.00 per acre at a public sale, and the sale was regarded as a good one; so that it is fair to infer from Patterson's inaction and indifference about the matter that the most that the accountant could have accomplished by proper diligence would have been the recovery of the land itself.    The accountant therefore should be charged with the value of the

land on April 9, 1897, the date of filing his account.   As there is no evidence in this case which definitely fixes the value of the Patterson land, it can be fairly presumed that it was worth as much per acre as the Home Farm of which it was once a part, that is $35.00 per acre, making the sum to be surcharged against the accountant $700, as of date April 9, 1897.   In making the accountant chargeable with only $700, instead of the balance of the purchase money, with interest, the auditor has gone to the utmost verge of his powers, if not beyond them.   But the accountant has no reason to complain of this conclusion of the auditor, and the exceptant should be satisfied.

On exceptions to the auditor's report, the court said in part as follows:

The sixth exception of the accountant and the first exception of M. H. Stevenson will be considered together.   The accountant's sixth exception is, "The auditor erred in surcharging the accountant $700 on account of the Sanson Patterson agreement."   Stevenson's first exception is, "The auditor erred in not charging the accountant with the entire balance due on this agreement," the Sanson Patterson agreement, dated January 2, 1888.   Stephen Smith therein "agreed to sell" to Sanson Patterson twenty acres of land off the west end of his farm for which Patterson agreed to pay the sum of $1,000.   On the article is credited a payment of $332.50, as of date January 2, 1888, and a payment of $100, as of date August 1, 1889.   The balance of the purchase money is all due, and draws interest from November 1, 1886.   The auditor surcharges the accountant, not with the full amount due on this article, but with $700, the value of the twenty acres as he estimated it.   Is this surcharge right?   We think not.   There is no evidence that this claim was in a better position to be collected when the executor took charge of the estate than now.   The estate has lost nothing by the delay, except it might be the accumulated interest.   M. H. Stevenson, as successor in title of the heirs and devisees of Stephen Smith, deceased, owns the legal title to this lot, and has for some time.   If the executor is made to pay this claim he at least would be entitled to have a transfer of the legal title made to him, or be subrogated to the rights of Stephen Smith under the terms of the article.   We think the more equitable way to dispose of this

claim would be to strike out this surcharge, and in the final decree to direct a transfer of this article of agreement to M. H. Stevenson.   He can then dispossess Mr. Patterson or compel the payment of the purchase money.   This is all the executor could have ever done, as there is no evidence that Patterson had any other property.   The auditor speaks of the action of ejectment in the case of Tenan v. Cain, and appears to base his finding that the executor should be surcharged on the ground that this twenty-acre tract of land and the unpaid purchase money were both lost to Stevenson.   This is not the case.   The judgment of foreclosure in the case referred to has been reversed by the Supreme Court.   See Insurance Company v. Tenan, Executor, 188 Pa. 239.   The lien of the mortgage that included this lot no longer exists; the balance of the mortgage unsatisfied and belonging to J. B. Tenan has either been paid by his receipt to the sheriff, or will be paid by money to be furnished by Stevenson under the decree in this case, and the sheriff's deed to J. B. Tenan can give no trouble as it is void and of no effect: Tenan v. Cain, 188 Pa. 242.   At all events, before the executor should be surcharged on account of the back purchase money of this lot, he should be allowed first to collect what he can by legal process, as the lot, until within a very short time, was incumbered by a mortgage placed by the decedent, Stephen Smith, on his whole farm before the sale to Patterson.   Exception six of the accountant is therefore sustained, and exception one of M. H. Stevenson is overruled, with the understanding that the executor assign and surrender to M. H. Stevenson the article of agreement in question. . . .

The sixth, seventh and eighth exceptions of M. H. Stevenson may be considered together.   In effect they are that the auditor erred in considering the claim of J. B. Tenan for half of the mortgage assigned by the life insurance company to him and Robert Scott.   The auditor finds " that neither J. B. Tenan nor any one in his behalf presented before him any claim against the estate on account of any interest he had in said mortgage."   Yet he considers and passes upon his claim. M. H. Stevenson objects to this.   But we do not see how he could have avoided considering it.   The very purpose of the account was to find the amount of the debts of the estate, not only paid but unpaid, and the amount of money that account-

ant had received, and thus ascertain how much money M. H. Stevenson should pay to the accountant out of the purchase money of the farm sold to him, in order that the accountant might pay the debts, if they had not all been paid or could not all be paid out of the money already in his hands. In Stevenson's Appeal, 179 Pa. 280, Mr. Justice MITCHELL says: "The executor should be required to state a full account of all his dealings with the estate, real and personal, and all outstanding debts. The court will then have before it the information necessary to make a final settlement of the whole matter." The accountant, under oath, in his account as directed, reports this outstanding debt. On the first page of the account after the "Dr. side" is given, we have these words:

Debts due from the estate to the executor and others:

| | |
|---|---|
| Balance due executor . . . . . | |
| Due J. B. Tenan on account of his ownership of half the insurance company mortgage . | $1,700.00 |
| Interest from June 23, 1894, . . . . | |
| Accrued interest paid by J. B. Tenan on June 23, 1894, . . . . . . . | 57.00 |

No exception was filed by M. H. Stevenson to this statement in the account, and the auditor could well take it for granted that it was to be considered in making distribution. Exceptions six, seven and eight are not sustained.

The ninth exception of M. H. Stevenson is that, "The auditor, having found as a fact that neither J. B. Tenan, nor any one in his behalf, presented before him any claim against the estate on account of any interest he had in said mortgage, and the records in evidence and referred to by the auditor showing that J. B. Tehan had issued sci. fa. sur said mortgage, had taken judgment, had issued a lev. fa., bought in the land for $2,100, an amount in excess of the amount due on the mortgage, he erred in reporting in 'statement E' an account between the accountant and M. H. Stevenson in his threefold relation of assignee of the heirs, etc., as follows, to wit. Second, as unaffected by the proceedings under the mortgage, sale, etc."

Debtor side.

Amt. of debtor side, as above, . . . $9,671.96

Credit side.

By amt. of credits in executor's ac-
count allowed,     .     .     .     $5,783.69
By amt. to be paid J. B. Tenan one half
mortgage and int. to Sept. 17, 1895,  1,883.86—7,667.55

Balance in hands of accountant to be paid to
Stevenson as assignee,     .     .     .     .     $2,004.41
Amt. of Stevenson purchase money not paid,          2,620.70
Deduct balance due Stevenson, etc.,     .     .     2,004.41

Amt. to be paid accountant by Stevenson to
enable him to pay off J. B. Tenan's half of
mortgage,     .     .     .     .     .     .     $616.29

The record referred to in this exception showing the issuance
of a sci. fa., etc., also shows a reversal of the judgment upon
which the lev. fa. issued, and that the sale to J. B. Tenan was
a nullity.   See Insurance Co. v. Tenan, Executor, 188 Pa. 239,
and Tenan v. Cain, 188 Pa. 242.

This raises the question, Is the receipt of J. B. Tenan given
to the sheriff in satisfaction of his bid—as provided by act of
assembly where a lien creditor becomes the purchaser at a
sheriff's sale—a payment of his mortgage claim?   We think
not.   There is no doubt that the rule caveat emptor applies
to sheriff's sales, and had J. B. Tenan got a title to anything
even as worthless as "moonshine," he would have had to credit
his bid or his claim.   But this judgment, the lev. fa., sheriff's
sale and deed have been adjudicated by the court of last resort
void and of no effect.   How then can his receipt given to the
sheriff be binding on him?   If there had been simply an erro-
neous judgment entered and it had been reversed on that ac-
count, the sheriff's sale and deed would not have been affected
under the provisions of the Act of 1705, 1 Purdon Dig. p. 660.
But that is not this case.   Here the whole proceeding and every
step taken by virtue of the judgment are void, and if J. B. Tenan
had gone into possession of the land he bought, an order of res-
titution of the land would have been made.

In the case of Wells v. Van Dyke, 106 Pa. 115 (and the
same can be said of the other cases cited by counsel for the

exceptant, Stevenson), the purchaser got something by the sheriff's sale; it may have been worthless, but still he had the title of the defendant Charles Wells; the judgment was declared void only as to one of the mortgagors, Amelia Wells, his wife. The principle ruling in the case is found in the opinion of Mr. Justice PAXSON: "A man who buys a worthless title at a sheriff's sale and pays for it or is allowed a credit on his lien, which is substantially the same thing, has no standing to repudiate the transaction subsequently." But this does not apply to a case where either the lower court, upon proper grounds being shown, or the court of last resort upon appeal, declares not only the judgment, but the lev. fa. on which the money was paid, or as here receipted, void. In such a case the party does not "repudiate the transaction," but the court declares it of no effect, and how can the record of that judgment, and lev. fa. and receipt thereon indorsed, after this judgment of the Supreme Court wiping out the whole proceeding, be evidence that J. B. Tenan received his money by the sheriff's sale?

The rule caveat emptor is, as we understand it, "that a purchaser of property buys at his own risk as to title and quality, unless the seller gives a warranty or the law implies one." It does not apply to fraudulent sales, or sales on void judgments. In these restitution is administered on the principles of equity, and where the title and interest of the defendant in the land sold is by the judgment of the court taken from the purchaser, and the land restored to the defendant, the purchase money will be restored to the purchaser if still in control of the court. This ninth exception of M. H. Stevenson is not sustained.

*Errors assigned* were in dismissing appellant's first, sixth, seventh and eighth exceptions to the auditor's report, and in sustaining accountant's sixth exception.

*M. H. Stevenson*, with him *J. C. Ewing*, for appellant.—The " more equitable way " which the court adopted as to the mortgage was to saddle on Stevenson the burden of doing what the executor alone could and should have done, thus releasing an unfaithful executor from all responsibility after years of supine neglect, and after the persistent efforts of him and his brother

to appropriate the land to their own use had been thwarted by Stevenson in long and costly litigation ending only in this court.

But from what source does the court draw its equities? It does not undertake to point out a single fact which was not found and considered by the auditor. Fiat equities are as worthless as fiat money. Equities grow on meritorious, proved facts, and you can no more gather equities from negligence, failure in duty, etc., than you can gather figs from thorns. The auditor's facts are consistent with a surcharge of the entire claim; they fail utterly to support a decree granting total immunity. As the court has not even attempted to point out any other facts, its decree has nothing on which to stand.

An auditor's findings upon the facts should not be disturbed, unless for clear error: Gilbert's App., 78 Pa. 269; Fahnestock's App., 104 Pa. 49; Scheppers's App., 125 Pa. 605.

Executors or administrators will not be permitted under any circumstances to derive a personal benefit from the manner in which they transact the business or manage the assets of the estate: Beck v. Uhrich, 16 Pa. 503; Norris's App., 71 Pa. 125.

It is a matter of serious doubt whether Patterson could be compelled to take a deed from Stevenson, instead of from the executor. The learned judge says that " M. H. Stevenson owns the legal title," etc. But, both on reason and all the authorities, the executor alone can make the deed. Our every act of assembly recognizes this. There is no privity of contract between Patterson and Stevenson, and Patterson is not bound by the decree here made, not being a party to it. The legal title of Stephen Smith passes to his executor " as trustee for the vendee " and the executor alone can convey it.

By the execution of the articles the vendor became a trustee of the title, and the vendee became a trustee of the purchase money, so that the beneficial ownership of each was transmitted: Rangler's App., 3 Pa. 378.

The decree of the common pleas awarding to J. B. Tenan $2,027.57, as lien creditor, standing unappealed from, is conclusive, etc.

We contend that this decree awarding to J. B. Tenan $2,027.57 extinguished his claim: Pierce v. Potter, 7 Watts, 475; Weidler v. Bank, 11 S. & R. 134; Wells v. Van Dyke, 106 Pa. 115.

The purchaser who gives a receipt upon his lien and the purchaser who pays down his money stand upon the same basis: Mann's App., 1 Pa. 29; Krumbhaar v. Yewdall, 153 Pa. 479; Hollister v. Vanderlin, 165 Pa. 252; Wells v. Van Dyke, 106 Pa. 115; Stroble v. Smith, 8 Watts, 280; Duff v. Wynkoop, 74 Pa. 300; Finnel v. Brew, 81 Pa. 362; Providence Co. v. Chase, 108 Pa. 319; Armstrong County v. McKee, 172 Pa. 64.

Even when decree is admittedly wrong, it is conclusive if unappealed from: Cash's App., 1 Pa. 166; Gratz v. Bank, 17 S. & R. 278; Yerkes's App., 8 W. & S. 224; Finnel v. Brew, 81 Pa. 362; McClain's Est., 180 Pa. 234.

The purchaser is chargeable with notice of patent defects, especially if he is plaintiff in the execution: Burd v. Dansdale, 2 Binn. 85; Heister v. Fortner, 2 Binn. 46; Caldwell v. Walters, 18 Pa. 85; Campbell v. Kent, 3 P. & W. 76; Martin v. Gernandt, 19 Pa. 129.

By proceeding to foreclose his mortgage J. B. Tenan was clearly estopped from coming in on the fund produced by the orphans' court sale of August 9, 1895. He cannot claim in "inconsistent rights," now claiming a lien on the land, and, failing in that, a lien on the fund: Edwards's App., 105 Pa. 108; Hyde v. Kiehl, 183 Pa. 429; Bigelow on Estoppel (5th ed.), 673.

*H. M. Dougan,* for appellee.—Inasmuch as the executor could not have done, with any prospect of success, the things which the appellant complains of him for not doing, the argument might be rested here; but the law protects the executor in other ways. "It is the harshest demand that can be made in equity to make a trustee answerable for what never was in his hands, or to make up a deficiency not owing to his wilful default:" Konigmacher v. Kimmel, 1 P. & W. 207; Johnson's App., 12 S. & R. 324; Neff's App., 57 Pa. 91; Dundas's App., 64 Pa. 326; Witmer's App., 87 Pa. 120; Bartol's Est., 182 Pa. 411; Semple's Est., 189 Pa. 389.

The Tenan mortgage was not paid: Ins. Co. v. Tenan, 188 Pa. 239.

OPINION BY MR. JUSTICE GREEN, December 30, 1899:

The numerous assignments of error in this case have practically resolved themselves into two. The first of them raises

the question of surcharging the accountant with the purchase money due upon the article of agreement for the sale of the twenty-acre lot to Patterson.   As to this claim, which was allowed by the auditor but disallowed by the court, we are of opinion that the ruling of the court was correct.   In the first place, it was the fact, no matter how resulting, that the mortgage of the life insurance company for $3,400 was a continuing lien upon the twenty acres, and therefore the executor could not have compelled payment of the purchase money if he had commenced legal proceedings to collect it, because he could never give a clear title to the purchaser.   No release of the lien of the mortgage was ever given or tendered, and the purchaser could not take title except subject to that lien.   In the next place, it is not shown by testimony that the purchaser could have paid the purchase money, but from the facts in evidence it is quite clear that he was financially unable to pay it.   A legal proceeding therefore upon the agreement, while it would probably have been unsuccessful in the collection of the money, would have occasioned a bill of costs for which the decedent's estate would have been liable at least to some extent.   In the third place, the accountant never received any of the purchase money in point of fact, and it not being shown that he could have collected it by means of legal proceedings, he ought not to be surcharged.   In the fourth place, the title to the twenty acres still remains in the estate of the deceased, and therefore has become vested in the present appellant who now holds it. It cannot therefore be said that he has suffered a loss by reason of the failure of the accountant to collect the purchase money under the agreement, and in these circumstances it seems to us that, when the court below directed the accountant to assign the contract to the appellant, this was in reality the proper and most equitable thing to do.

The second question raised by the assignments affects the right of J. B. Tenan to have any distribution of the fund on account of his ownership of the one half of the mortgage given by the decedent to the Mutual Life Insurance Company of New York.   There is no question as to his ownership of this one-half interest, and there is also no question as to the fact that it has never been actually paid.   The objection to any payment being allowed now is, that it has been technically paid by

reason of the fact that a scire facias was sued out on the mortgage, and a judgment entered thereon for want of an affidavit of defense by the executor, a levari facias was issued thereon, and a sheriff's sale was had at which J. B. Tenan was the purchaser, to whom a sheriff's deed was delivered, and a lien creditor's receipt for the purchase money was given to the sheriff for the deed. This, it is claimed with the greatest persistency, was actual payment so far as J. B. Tenan was concerned. The reply made to this claim by the court below was that subsequently on appeal to this Court the judgment in a scire facias proceeding was reversed on the ground that it was an absolutely void judgment and all proceedings under it were a nullity. The sheriff's sale under the judgment was a void sale and the deed to the purchaser was a void deed. It not only conferred no title, it was a legal nullity. In other words, the judgment and all the subsequent proceedings were the same as if they had never taken place; they had no existence in any manner which the law could or would recognize. This is a very different thing from the judicial sale and purchase of a worthless title. Had it been of that character only the purchaser would have lost his debt and that, without any regrets on the part of any court having to deal with the matter, because the proceeding was a trick supposed to be smart, in order to get the title to the property for a small part of its value. The scire facias was issued against the executor of the mortgagor and the terre-tenant, but was not served on the terre-tenant, and the executor was the brother of the use plaintiff, and doubtless in collusion with him to bring about the anticipated result. But the terre-tenant, the present appellant, got wind of it in time to take an appeal, and finding that he also had opportunity of availing himself of a technical defense took advantage of his opportunity and defeated the judgment and all its belongings. In this state of affairs the situation was, that the scire facias on the mortgage was still pending, shorn of its judgment with all its consequences. The plaintiff could then proceed to trial on his scire facias if he so chose. In the mean while the proceedings on the audit upon the executor's account were going on. They had reached the point of a hearing before the court on exceptions to the auditor's report. The holder of the mortgage had made no claim to any part of the fund, because he was proceed-

ing on his mortgage, and he could not do that and assert a claim upon the fund which was the proceeds of a voluntary sale of the land by the executor to the appellant. The holder of the mortgage had a perfect legal right to do this if he chose, and having elected to adopt this course he properly abstained from any claim upon the fund for distribution. But the learned court below, perhaps somewhat wearied with the persistency of this constant and trifling litigation which had already knocked five times at the door of the Supreme Court, seeing a shorter and quite as desirable way of ending the interminable struggle, suggested to the respective counsel of the litigants that the claim of the holder of the mortgage might be disposed of in the present proceeding, and expressed a willingness to adopt that method by either sending the case back to the auditor or by the court passing upon its merits as the parties might desire. To this suggestion the counsel for the mortgage creditor replied that he did not want the case sent back to the auditor, and the counsel for the appellant, saying nothing about sending it back, insisted that the claim was already paid by the decree of distribution made at the time of the sheriff's sale. The court thereupon proceeded to dispose of the claim. Just here it is proper that we should say that the discourteous remarks made by counsel for the appellant respecting the action of the court below on this subject were entirely uncalled for and altogether unjust. The orphans' court is the sole repository of the whole power of the commonwealth for the settlement of dead men's estates, and is not the servant of an auditor nor of counsel when exercising that function. It has very broad power and great discretion. Beyond all question it had, in this instance, the power and the undoubted right to do just what it did do. The question before it was a question arising upon the distribution of the decedent's estate. With the consent of the plaintiff in the scire facias it could entertain and decide upon the plaintiff's claim. That consent was given and the claim was thereupon heard. The facts had already been reported by the auditor and the amount of the claim fixed. The only contention against the allowance was that it had been technically paid by the judgment and sale and subsequent proceedings in the scire facias on the mortgage. In our opinion that contention is altogether untenable for the very satisfactory reasons given by the court

below, and which have been already stated. The judgment deed and receipt to the sheriff were all legal nullities and possessed no efficacy whatever. The amount of the plaintiff's claim as part owner of the mortgage was ascertained, and, if he chose, he could abandon his proceeding on the scire facias and prefer it in the orphans' court. He did this, and it was lawfully entertained and correctly disposed of. The assignments of error are all dismissed.

The decree of the court below is affirmed at the cost of the appellant, and record remitted.

